# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

TIM POWELL, ET AL., )
)
        Plaintiff, )
vs. ) NO. CIV-08-0753-HE
)
TODD NUNLEY, ET AL., )
)
        Defendants. )

## ORDER

Defendants United States of America and Todd Nunley[1] have moved to exclude the test of Dr. Michael D. Lyman on Daubert grounds.[2]

The standards for a Daubert challenge to expert testimony are familiar. "In accord with [Rule 702], the Supreme Court has determined that the [trial judge] 'must ensure that any and all scientific testimony or evidence is not only relevant, but reliable.'" Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1232 (10th Cir. 2004) (quoting Daubert, 509 U.S. at 589). This gatekeeper function applies to all expert testimony, not merely to that deemed to be "scientific" in nature. Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147–49 (1999). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness

---

[1] Subsequent to the filing of the motion, judgment was entered in Mr. Nunley's favor on all claims against him in his individual capacity. Order, January 14, 2010 [Doc. # 121].

[2] Daubert v. Merrill Dow Pharm. Inc., 509 U.S. 579 (1993). See also Fed. R. Evid. 702, which now substantially incorporates the principles of Daubert.

> qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In deciding the admissibility of expert testimony, the court must determine whether the expert is proposing to testify to scientific or other specialized knowledge which will assist the trier of fact in understanding or determining a fact in issue. Daubert, 509 U.S. at 592. The court first determines whether the proposed expert is qualified to offer an opinion on the issues involved in the particular case. Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). A qualified expert must possess the necessary knowledge, skill, experience, training or education relevant to the facts at issue. *Id.* The court then must conduct a two-part inquiry to fulfill its Daubert gatekeeping role, determining first if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his [or her] discipline.'" Bitler, 400 F.3d at 1232–33 (quoting Daubert, 509 U.S. at 592). In making this determination, the district court must decide whether the reasoning or methodology underlying the testimony is scientifically valid. *Id.* at 1233. Second, the district court must inquire "into whether proposed testimony is sufficiently 'relevant to the task at hand.'" *Id.* at 1234 (quoting Daubert, 509 U.S. at 597). Is there an appropriate "fit" between the evidence offered and the material issue to which it is directed?

The burden of demonstrating the admissibility of expert testimony, as against the standards of Daubert and Rule 702, is on the proponent of the testimony. U.S. v. Nachio, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); Ralston, 275 F.3d at 970.

Discussion

Dr. Michael Lyman is a professor of criminal justice studies at Columbia College of Missouri, with extensive experience in the management of police investigations and the training of police officers. He is offered as an expert on various aspects of the conduct of the officers in this case. The defendants do not appear to take issue with Dr. Lyman's qualifications in this area and the court concludes he has ample qualifications to address certain of the issues in this case.

Although Dr. Lyman describes his opinions more elaborately, they essentially boil down to a single opinion — that Nunley and/or the other officers involved did not do sufficient investigation as to the exact location of the house to be searched. He suggests that generally recognized police standards, grounded largely in the need to be particularly careful of information from informants and/or co-defendants and in the need for particularity in identifying the property to be searched pursuant to warrant, indicate the officers did not do enough to verify the location of the proper house. Defendants object to his opinions on the basis they involve legal conclusions, are based on inapplicable assumptions, and are hence based on unreliable methods.

The court concludes that, while various aspects of Dr. Lyman's conclusions offer ample basis for cross-examination,[3] they do not provide a basis for excluding his opinions

---

[3] His statements that Nunley was "unconcerned" about the proper address or that defendants "ignored" their duty to investigate are particularly overblown and reflect a "hired gun" or advocate's mentality rather than that of someone applying professional standards to an issue.

3

altogether. It is true that Dr. Lyman grounds his opinions, at least in part, on matters that are not central to this case. For example, the sufficiency of the evidence to support the <u>issuance</u> of a warrant or the sufficiency of the description of the premises to obtain a warrant are not at issue in this case, except as they may affect the question of how and where this warrant was <u>executed</u>. It is also true that, in some respects, Dr. Lyman's description of the basis for his conclusions implicates the concern in <u>Specht v. Jensen</u>, 853 F.3d 805 (10th Cir. 1988), that an expert's testimony not be permitted to define the legal parameters for the jury, so as to invade the province of the court. While he will not be permitted to advise the jury as to legal standards, he can testify as to expected police practice in seeking and verifying accurate location information. The fact that police practices may be motivated in part by the need to comply with legal standards for particularity in warrant applications does not mean that opinions as to those practices are necessarily improper legal opinions within the meaning of <u>Specht</u>.

The court concludes that Dr. Lyman's opinions, both as to the need for care in utilizing informant information and in identifying property to be searched, are sufficiently grounded in accepted principles of police practice, identified by him, to be admissible. Further, he has articulated a sufficient basis for his opinions as to other steps or actions that the officers could have or should have taken to verify the location to make those opinions admissible.[4]

---

[4]In some respects, Dr. Lyman's analysis comes close to suggesting that, if the wrong house got searched, then the officers' efforts to verify the location were <u>necessarily</u> inadequate, an assumption inconsistent with the applicable legal standards. However, the

4

Subject to the limitations noted in this order, defendants' motion to exclude the testimony of Dr. Lyman [Doc. # 75] is DENIED.

**IT IS SO ORDERED**.

Dated this 22nd day of March, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

court concludes Dr. Lyman stopped short of such an outright assumption and identified sufficient grounds for his opinions.